UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES DARON RITTER,<br><br>            Plaintiff,<br><br>vs.<br><br>BRENT REINKE, RANDY BLADES, LT. EUGENE CLARK, SERGEANT GREENLAND, JILL WHITTINGTON, RONA SIEGERT, DEBBIE RICHARDSON, JOSEPH P. CORDONA, TINA WILLIAMS, DR. SCOTT LOSSMAN, GLEN BABICH, WILLIAM POULSEN, PA VALLEY, PA BISH, and UNKNOWN INDIVIDUALS,<br><br>            Defendants. | Case No. 1:13-cv-00509-BLW<br><br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this prisoner civil rights case are several motions. The first is Defendant Eugene Clark's Motion for Summary Judgment (Dkt. 40), in which he asserts that the claims against him should be dismissed, due to Plaintiff's failure to exhaust his administrative remedies. The Plaintiff, James Ritter, has also filed a Motion to Compel (Dkt. 36), in which he asks the Court to require defense counsel to produce an

MEMORANDUM DECISION AND ORDER  1

address for a defendant, Debbie Richardson, who has not yet been served.[1] Lastly, the parties have also filed two motions to strike. (Dkts. 49 and 51). Having reviewed the submissions of the parties and otherwise being fully informed, the Court determines that the decisional process would not be significantly aided by oral argument. For the reasons that follow, the Court will deny all motions.

## BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Corrections ("IDOC") who is currently being housed at the Idaho State Correctional Institution ("ISCI"). He brings claims for Eighth Amendment deliberate indifference against several different defendants. Broadly speaking, he alleges that he was denied proper access to adequate pain medication for several medical conditions. The present motion for summary judgment, which concerns exhaustion of administrative remedies, relates only to Lieutenant Clark.

Plaintiff entered IDOC custody on September 23, 2011. (Amended Complaint, Dkt. 9, ¶ 1). At the time, he had just undergone surgery on his lumbar spine at the West Valley Hospital in Canyon County. (*Id.* at 5). He alleges that at the time he entered custody, he was also suffering from a several serious medical conditions, including the lower back injury, acute pancreatitis, a torn gallbladder, and a herniated cervical disk. (*Id.* at ¶ 1, 14).

---

[1] Though he initially requested an extension of time due to the unexpected absence of ISCI's paralegal, (Dkts. 44 and 45), Ritter filed was ultimately able to file a responsive brief on July 24, 2015. (Dkt. 48).

Plaintiff alleges that as soon as he entered IDOC custody, prison medical care providers reduced his pain medication, despite the fact that he was suffering from extreme pain at the time. (*Id.*). Fearing that the medications he was allowed would not be enough to control his pain, Plaintiff saved two pills to take at a later time. He was caught with these pills, apparently by Lieutenant Clark, who placed him in administrative segregation. (*Id.* at ¶ 5-6). Plaintiff alleges that Lieutenant Clark then ordered prison medical staff to completely discontinue his medication. Plaintiff alleges that he remained in segregation for thirty-seven days without a single medication for pain and that he suffered excruciatingly as a result. (*Id.* at ¶¶ 3, 8, 11). Though neither the original Complaint nor the Amended Complaint made the time sequence clear, an affidavit filed by the defense in support of the summary judgment motion establishes that Plaintiff was placed in administrative segregation no later than September 26, 2011. (Whittington Aff. at ¶ 13 & Exh. H). Plaintiff signed his Complaint on November 26, 2013, and it was filed three days later, on November 29, 2013. (Dkt. 3).

## LEGAL STANDARDS

**1. Summary Judgment Standards**

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which

MEMORANDUM DECISION AND ORDER  3

factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, (1986). There must be a genuine dispute as to a material fact—a fact "that may affect the outcome of the case." *Id.* at 248.

To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed.R.Civ.P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir.2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is

insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party or grant the motion on a ground not raised by either party, provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

**2. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") requires prisoners to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during the lawsuit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

MEMORANDUM DECISION AND ORDER  5

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the beginning of litigation, and disputed factual questions relevant to exhaustion should ideally be decided at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

As with any other summary judgment motion, summary judgment in favor of the moving party with respect to exhaustion is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420

MEMORANDUM DECISION AND ORDER  6

(9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

Because exhaustion is an affirmative defense, the defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). Under recent Ninth Circuit case law, if the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner is relevant to the question "of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1172-73.

MEMORANDUM DECISION AND ORDER  7

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

## DISCUSSION

**1. Motion for Summary Judgment**

Because the Court concludes that Clark has not met his initial burden under *Albino v. Baca* of proving that Plaintiff failed to avail himself of intra-prison administrative remedies for his claims against Clark, the motion for summary judgment will be denied.

In explaining the Court's reasoning to the parties, it may be helpful to keep in mind that there are no allegations against Clark in the Amended Complaint other than those that relate to his alleged decision to deny Plaintiff pain medications during his confinement in administrative segregation. The Amended Complaint alleges specifically that Lieutenant Clark was "responsible for placing plaintiff in segregation and ordered medical staff to discontinue his needed medication where plaintiff suffered for months." (Amended Compl. p. 2-3, Dkt. 9). Plaintiff also alleges that he remained in segregation for thirty-seven days without a single medicine for pain. (*Id.* at p. 5-6). Though the Court concluded that these allegations were sufficient to state a claim against Clark, the Amended Complaint did not make clear the dates when Plaintiff's confinement in administrative segregation began. However, the affidavit of the ISCI grievance coordinator, submitted in connection with Clark's Motion for Summary Judgment, establishes that Plaintiff was first placed in administrative segregation on September 26, 2011. (Whittington Aff., Dkt. 40-2, ¶ 13).

MEMORANDUM DECISION AND ORDER  8

In support of his arguments, Clark has submitted information explaining the grievance procedures that were in place at ISCI during what defense counsel apparently took to be the relevant time frames. (*Id.,* ¶¶ 3-10 and Exhs. A-F). The ISCI grievance coordinator states that she reviewed her files for all grievances submitted by Plaintiff for the time period between November 26, 2011 and November 26, 2013 and found only four grievances pertaining to the claims in this case. (*Id.* ¶ 12). None of these claims, Clark argues, pertain to him or any dealings he had with Plaintiff. However, if Plaintiff was placed in administrative segregation on September 26, 2011 and remained there for thirty-seven days (i.e. until November 2, 2011), then one would expect that a grievance relating to Clark's conduct might have been submitted during that time frame or the weeks immediately following Plaintiff's transfer out of segregation. However, because the ISCI grievance coordinator did not even look for grievances originating during that time frame, Clark has not met his initial burden under *Albino v. Baca* of proving that Plaintiff failed to avail himself of intra-prison administrative remedies. 747 F.3d at 1172. Clark appears to have assumed that any claims arising before November 29, 2011 would be time-barred, and that may well turn out to be the case. Nonetheless, Clark has framed his argument in terms of exhaustion, not in terms of the statute of limitations, and on the issue of exhaustion he has not met his initial burden of showing that there are no genuine issues of material fact. Simply put, Defendant has put nothing in the record showing that Plaintiff did not actually grieve, or attempt to grieve, issues relating to the denial of pain medication while he was in administrative segregation.

MEMORANDUM DECISION AND ORDER  9

Whether through oversight or otherwise, Plaintiff's opposition briefs do not address Clark's failure to establish that Plaintiff filed no grievances for the relevant time period. Plaintiff does, however, offer several possible explanations for the absence of a grievance regarding Clark's conduct toward him during the time he was in administrative segregation. His submissions do not provide a very clear picture of what he believes happened with respect to his attempts to grieve Clark's conduct, but he appears to be claiming that prison authorities either interfered with his ability to file a grievance while he was in administrative segregation, or lost certain crucial grievances, or both. He alleges, for example, that "at one point he had been asking for a grievance for two weeks and was denied." (Dkt. 48, p. 5). In the next paragraph, however, he alleges that while in administrative segregation, he used a concern form to ask for a grievance form but thereafter "had no way of conducting an informal resolution process for the cruel treatment he had received from staff and medical personnel." (*Id.*). At another point he alleges that "shortly after being removed from the yard to ICC Plaintiff filed a grievance that was conveniently lost," whereas later on in that same paragraph he alleges that he "filed several concern forms regarding the need of a new grievance form and was denied for days." (*Id.* p. 7). Though these arguments sometimes seem self-contradictory and the sequence of events is not always clear, Plaintiff's arguments raise issues of fact on the question of whether he was effectively prevented from filing a grievance while in administrative segregation. However, because the ISCI grievance coordinator's search for grievances did not address the relevant time frame, it is not necessary for the Court to sort these issues out at this time.

MEMORANDUM DECISION AND ORDER 10

Though the Court is denying Clark's motion on the basis that he has not met his burden of proving that Plaintiff failed to exhaust his administrative remedies, it does appear that Clark may have a viable statute of limitations defense, given that the offending conduct appears to have occurred more than two years prior to the filing of the lawsuit. The Court will not, however, address that defense at this juncture. Though the Defendant's brief appeared to assume that any claims arising before November 29, 2011 would be time barred, the statute of limitations issue was addressed only tangentially in the parties' submissions. Further, it is apparent that Plaintiff may have some defenses to the argument that his claims are time barred. Given that Plaintiff has asserted that he either filed or attempted to file a grievance while in administrative segregation, it may turn out that the statute of limitations was tolled for some or all of that time period. *See, Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) (holding that applicable statutes of limitations are tolled while an inmate exhausts administrative grievance procedures pursuant to the Prison Litigation Reform Act); *See also Johnson v. Rivera,* 272 F.3d 519 (7th Cir. 2001); *Harris v. Hegmann,* 198 F.3d 153, 157-58 (5th Cir. 1999); *Galloway v. Nicola,* 2012 WL 2879311 (D. Idaho 2012); *Sheridan v. Reinke,* 2012 WL 1067079 (D. Idaho 2012).[2] Clark may raise the statute of limitation defense at a later time, if he chooses to file a second summary judgment motion on the merits of the case.

---

[2] Though tolling arguments may arise under the PLRA, Plaintiff's suggestion that submission of a notice of claim under the Idaho Tort Claims Act ("ITCA") operated to toll the statute of limitations is unavailing. (Plaintiff's Brief, Dkt. 48, p. 13-14). The ITCA applies only to state law claims, not to federal claims. Therefore, Plaintiff did not need to file a notice of tort
(Continued)

MEMORANDUM DECISION AND ORDER  11

**2.     Motion to Compel**

Also pending is Plaintiff's Motion to Compel (Dkt. 36), in which he asks the Court for an order compelling Corizon to produce the service address of Defendant Debbie Richardson. Defendants opposed this motion, and their counsel submitted a statement explaining that they attempted to locate Richardson at the address provided by her previous employer, but were unable to do so. (Dkt. 39; *See also,* Notice to Court Regarding Service of Debbie Richardson, Dtk. 28). The Court cannot compel defense counsel to provide information that is not within its possession. And because defense counsel has already contacted Richardson's former employer in an effort to locate her, issuing a subpoena duces tecum directed to Corizon would not be likely to yield the information Plaintiff seeks. The motion to compel will therefore be denied.

Nor will the Court grant Plaintiff's alternative request to allow service by publication. Though disfavored and rarely used, such a procedure is still technically possible under applicable state and federal laws. *Antonio v. Azurdia,* 2014 WL 7206609 at *2 (2014) (holding that under Fed. R. Civ. Pro 4(e) federal courts may authorize service by publication if that procedure would be allowed "in courts of general jurisdiction where the district court is located or where service is made"). *See also, Evans v. Galloway,* 108 Idaho 711, 712-13 (1985) (authorizing service by publication in cases where a defendant moves and leave no forwarding address from which his or her

---

claim under Idaho Code § 6-906 in order to pursue his deliberate indifference claims under section 1983.

whereabouts can be determined). However, service by publication also raises serious due process concerns and should therefore only be used as a last resort. *Antonio v. Azurdia* at * 2.

While the Court allowed the deliberate indifference claims against Richardson to proceed, her only apparent involvement in the events giving rise to this lawsuit was that she denied at least one of Plaintiff's medical grievances. In other words, the claims against her are teetering on the edge of plausibility under the pleading standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In light of its screening obligations under the PLRA and the relative thinness of the claims against Richardson, the Court will be extremely reluctant to allow service by publication in this case.

However, Plaintiff's inability to locate Richardson thus far does constitute good cause for his failure to serve her within the time frame originally allowed. Therefore, pursuant to its authority under Fed. R. Civ. Pro. 4(m), the Court will grant Plaintiff an additional sixty days in which to discover Ms. Richardson's whereabouts and effect formal service upon her. Given the Court's extreme reluctance to allow service by publication, Plaintiff should use any and all formal and informal means at his disposal to locate Richardson, including employing the services of an outside investigator.

**3.  Motions to Strike**

Also pending is a Motion to Strike (Dkt. 49), in which Defendants William Poulson and Rona Siegert ask the Court to strike Plaintiff's Response to their Answer (Dkt. 47). The motion will be denied. Though Federal Rule of Civil Procedure 7(a) does

MEMORANDUM DECISION AND ORDER   13

not permit a response to an answer unless the Court orders a party to provide one, which it has not done in this case, in light of Plaintiff's pro se status, the Court considers this filing along with Plaintiff's other submissions. Plaintiff's own Motion to Strike Defendants' Motion to Strike (Dkt. 51) seems to have been prompted by boilerplate language in the Defendants' answer asking that the claims against them be dismissed. To clarify, claims against defendants who have already appeared and answered cannot be dismissed unless a plaintiff is given notice and an opportunity to respond. Plaintiff's Motion to Strike Defendants' Motion to Strike was unnecessary, and will therefore be denied.

## ORDER

1. Plaintiff's Motion for an Extension of Time (Dkt. 44 and 45) is **RETROACTIVELY GRANTED.**

2. Defendant Clark's Motion for Summary Judgment (Dkt. 40) is **DENIED**.

3. Plaintiff's Motion to Compel (Dkt. 36) is **DENIED.** Plaintiff shall have an additional **sixty (60)** days from the date of this Order in which to effect formal service of process on Ms. Richardson.

4. Defendant's Motion to Strike (Dtk. 49) is **DENIED.** Plaintiff's Motion to Strike (Dkt. 51) is **DENIED.**

   **IT IS SO ORDERED.**

MEMORANDUM DECISION AND ORDER  14



DATED: September 23, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER  15