UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES DARON RITTER, | Case No. 1:13-cv-00509-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| BRENT REINKE, RANDY BLADES, LT. EUGENE CLARK, SERGEANT GREENLAND, JILL WHITTINGTON, RONA SIEGERT, DEBBIE RICHARDSON, JOSEPH P. CORDONA, TINA WILLIAMS, DR. SCOTT LOSSMAN, GLEN BABICH, WILLIAM POULSEN, PA VALLEY, PA BISH, and UNKNOWN INDIVIDUALS, | |
| Defendants. | |

**INTRODUCTION**

Before the Court in this prisoner civil rights case are motions for summary judgment filed by Defendants William Poulson, Eugene Clark, and Rona Siegert. *See* Dkts. 82, 83. Plaintiff James Ritter has also filed various motions, including four discovery motions and a motion for an extension of time to effect service on Defendant Debbie Richardson. *See* Dkts. 67, 68, 69, 70, 71, 77. For the reasons explained below, the Court will grant defendants' motions for summary judgment and deny all other pending motions.

# BACKGROUND

Plaintiff James Ritter is a prisoner in the custody of the Idaho Department of Corrections ("IDOC"). He alleges that the defendants violated his Eighth Amendment rights by refusing to provide adequate pain medication.

## 1.    Facts Relevant to Ritter's Claim Against Clark

Ritter entered IDOC custody on September 23, 2011. He was suffering from several serious medical conditions at the time, including a lower back injury, acute pancreatitis, a torn gallbladder, and a herniated cervical disk. *See Am. Compl.*, Dkt 9, ¶¶ 1, 2, 14, at pp. 5-6.

Ritter says that as soon as he entered IDOC custody, prison medical care providers reduced his pain medication. On September 26, 2011, Ritter decided to save two pills and take them later. He was caught and placed in administrative segregation as punishment. *Id.* ¶¶ 5-6, at p. 5; Dkt. 83-3 (IDOC disciplinary report). According to Ritter, Defendant Lieutenant Clark handcuffed him, took him to administrative segregation, and ordered prison medical staff to discontinue his medication. Clark disputes this fact; he says he has no authority to issue medical orders, and that he did not do so in this case.

Ritter says he remained in segregation until October 18, 2011,[1] without a single

---

[1] Ritter initially said that he was in administrative segregation for 37 days, which would be until November 2, 2011. *See Am. Compl.*, Dkt. 9, ¶ 10. Later, however, he stated that he was transferred to ICC on October 18, 2011, which is consistent with the prison's internal transfer records. *See Ex. H to Whittingon Aff.*, Dkt. 40-10.

medication for pain and that he suffered excruciatingly as a result. *Id.* ¶¶ 3, 8, 10, 11, at pp. 5-6.

These are the only facts relevant to Defendant Clark's alleged wrongdoing. Otherwise, plaintiff primarily complains that Defendant William Poulson and others failed or refused to provide adequate pain medication.

**2.      Facts Relevant to Ritter's Claim Against Defendant Poulson**

Poulson is a nurse.  He began working for IDOC in July 2012.  Between July 2012 and November 2013, Poulson saw Ritter ten times.  In 2012, Ritter had appointments with Poulson on September 10, 12, and 13, October 11, 22, and 29, November 5, and December 18.  In 2013, Ritter had appointments with Poulson on February 7 and November 7.  *See Poulson Aff.*, Dkt. 82-3, ¶¶ 20-22, 25, 27, 30, 31, 34, 37, 41.  Ritter saw numerous other providers during this time as well, and he also underwent various tests, including bloodwork, an x-ray, and an MRI.  *Id.* ¶ 20, 25, 29, 36.  Likewise, after Ritter filed his complaint in November 2013, he continued to be seen by prison medical staff, including Poulson, as well as offsite providers.  *See id.* ¶¶ 42-59.

Ritter's medical care providers have prescribed a wide variety of medications to address his pain, including Ultram, Norco, Tegretol, Apap, Meloxicam, Tramadol, ibuprofen, Depakene, Neurontin, and Elavil.  Plaintiff was also provided with physical therapy to help with pain management.

On some occasions, Poulson declined to prescribe the specific pain medications Ritter was requesting, and instead prescribed alternative medications.  For example, in

December 2012, Ritter saw Dr. Shane Andrew, who had performed surgery on Ritter's back in the summer of 2011. Dr. Andrew planned an MRI for Ritter, and, in the meantime, recommended Tramadol and ibuprofen for pain. *See Poulson Aff.* ¶ 33; MR1, MR48.[2]

Poulson disagreed with Dr. Andrew's recommendation and instead prescribed an alternative medication (Depakene) to treat Ritter's pain. *See Poulson Aff.* ¶ 34. A few days later, another provider at the prison prescribed Tramadol, and Ritter apparently received that medication until February 2013. *Id.* ¶ 35. In February 2013, Ritter saw Dr. Andrew again to discuss the results of his MRI. After this visit, Dr. Andrew recommended that Ritter stop taking Tramadol and switch to NSAIDs. He also recommended physical therapy. *Id.* ¶ 38.

Another time, on October 11, 2012, Poulson prescribed Tegretol to treat Ritter's nerve pain. *Poulson Aff.* ¶ 25. During this visit, Poulson recorded his impression that Ritter met the DSM-IV criteria for "probable malingering." *See* MR 37. Poulson also stated that Ritter "seemed to imply that he would try anything I prescribed for his pain and intentionally fail or claim adverse psychological effects until I prescribed him narcotics . . . . I suspected gaming with this patient because he should be amenable to neuropathic pain treatment options which he had failed in a serial fashion so far." *Id.*

---

[2] Citations to "MR" refer to Ritter's Bates-stamped medical records, which are contained in Exhibit A to Poulson's Affidavit at Docket Entries 82-4 and 82-5.

Ritter says that during this visit he told Poulson that he could not take Tegretol because it made him suicidal.  Ritter's medical records available to Poulson at that time did not document that side effect, however.  Rather, Ritter orally reported that he had taken this medication several years earlier.  In any event, Ritter later reported that he was not taking Tegretol for pain and Poulson discontinued the prescription.  *Poulson Aff.*, Dkt 82-8, ¶ 27.

## ANALYSIS

The Court will first resolve Ritter's pending motions, and then turn to defendants' motions for summary judgment.

### 1.    Discovery Motions

Ritter has filed four motions to compel further responses to discovery requests. *See Motions to Compel*, Dkts. 68-71.  The Court will deny these motions.

Generally, each party is entitled to discover nonprivileged information "relevant to any party's claim or defense" so long as it is proportional to the needs of the case in light of the following factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefits. Fed. R. Civ. P. 26(b)(1).  Nevertheless, courts retain broad power to limit the frequency and extent of discovery.  *Id.*  ("*Unless otherwise limited by court order*, the scope of discovery is as follows: . . . .") (emphasis added).  Indeed, a court can – and must – limit

discovery if it determines that the discovery is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Ritter seeks an order compelling Poulson to provide additional responses to six interrogatories (Nos. 1, 2, 4, 14, 16, and 19) and eight document requests (Nos. 5, 7, 9, 10, 12, 14, 15, and 17). *See Motions to Compel,* Dkts. 68, 70. He seeks an order compelling Defendants Siegert and Clark to further respond to ten interrogatories (Nos. 1-4, and 13-18) and six document requests (Nos. 10, 11, 12, 16, 17, and 18). *See* Dkts. 68-71 (motions) and Dkts. 73-76 (response briefs).

The Court has reviewed each disputed request along with its corresponding response and has determined that no further responses are necessary. The Court will not discuss each request here, though it will briefly discuss a few requests that highlight the nature of the problems.

First, many of the disputed discovery requests seek irrelevant information. For example, Ritter asks Defendant Poulson to list all complaints filed against him by any person. *See Interrog. No. 2,* Dkt. 73, at 4-5 (asking Poulson, among other things, to "list all complaints filed against the Defendant, all investigation reports all write ups."). Ritter also asked Poulson to identify any complaints filed against any medical staff member who worked at the prison, regardless of whether that staff member cared for Ritter. *Interrogatory No. 14 to Poulson,* Dkt. 73, at 6-7. Similarly, Ritter asked Defendants Siegert and Clark to identify "any documents related to any complaint, grievance, censure reprimand, or rebuke directed toward" the defendants as well as dozens of other

individuals.  *Interrogatory No. 13 to Clark & Siegert*, Dkt. 75-3, at 13.  Ritter also

propounded this interrogatory upon Siegert and Clark:

> Please provide a copy of all Complaints from the court where sanctions,
> fines, or contempt of court fines have been put in place against IDOC for
> medical problems.  Please list all the names of inmates who have filed
> grievances regarding Corizon and their bad faith acts.

*Interrogatory No. 16 to Siegert and Clark,* Dkt. 75-3, at 15.  In another disputed request,

Ritter asks Siegert and Clark to "list all formal and no-formal investigations that have

been brought against Corizon Medical Services."  *Interrog. No. 17,* Dkt. 75-3, at 15. The

Court will not compel further responses to such sweeping interrogatories.

A second problem with Ritter's motion to compel is that, at times, he is not

actually complaining about a lack of response, he is just unhappy with the substance of

the response.  For example, Ritter propounded this interrogatory upon Siegert and Clark:

"Please provide a copy and an explanation regarding the discontinuation of medication

when an inmate gets caught hiding pills, cheeking his coeds [sic][3] etc., Is it IDOC policy

to discontinue or is it Corizon policy?  Please explain in detail."  Dkt. 75-3, at 14.  After

asserting objections, defendants responded with this:  "Defendants are unaware of any

policy regarding discontinuing medications when an inmate is caught hiding or cheeking

pills.  Whether to discontinue medication is a matter of medical judgment made by the

individual medical providers."  As part of their response, defendants also provided Ritter

---

[3] Ritter likely meant to say "cheeking his meds," rather than "cheeking his *coeds*."

with a copy of an IDOC Standard Operating Procedure entitled "Medication Administration Training."  Dkt. 75-4, at 9.  Although Ritter is not happy with this response, defendants have answered the question posed.  There is no need for an order compelling any further response.

A third global problem with plaintiffs' discovery requests is that many are not narrowly tailored and do not limit themselves to a single topic.  Defendants' responses to these sorts of requests were reasonable under the circumstances, and the Court is not persuaded to compel further responses.

Finally, the Court is not persuaded to compel production of additional medical records.  Here, plaintiff primarily focuses on his request for "pictures" from defendants. Ritter later explained that he is not actually seeking photographs, but is instead seeking images from MRIs, CT scans, and the like.  Plaintiff says he needs to view these images to "get a true determination" regarding the extent of his injuries so he can get a second opinion.  Defendants have explained that, except for x-rays taken at the prison, they do not have possession, custody or control of the images. Apparently, when scans are taken off-site, the prison does not receive images; it simply receives the radiology reports. Defendants further indicate that they have produced 790 pages of medical records to plaintiff, which include these radiological reports, and, further, that they will provide copies of x-ray images taken onsite.

The Court has considered the parties' remaining arguments, and is not persuaded to compel any further responses to the disputed requests. Accordingly, the Court will

deny Ritter's motions to compel.

The Court will also deny Ritter's motion for an extension of time in which to serve Defendant Debbie Richardson. *See* Dkt. 67. The Court is not persuaded by Ritter's arguments that defense counsel's allegedly "deceptive" conduct entitles him to additional time to serve Richardson. Further, roughly eighteen months ago, the Court granted Ritter an additional sixty days in which to serve Ms. Richardson. *See Sept. 23, 2015 Order,* Dkt. 54, at 14. Those sixty days have long since passed, and the Court is not inclined to grant plaintiff any additional time in which to effect service. Accordingly, Ritter's motion for an extension will be denied.

Having resolve plaintiff's pending motions, the Court will turn to defendants' motions for summary judgment.

## 2.      Motions for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48* (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA, 198 F.3d 1152, 1159 (9th Cir. 1*999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu, 849 F.2d 1205, 1208 (9th Cir. 1*988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby, 477 U.S.* at 255.  If a claim requires clear and convincing evidence, the question on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2*001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir.20*00).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux, 263 F.3d* at 1076.  The non-moving party

must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).   Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay.  *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

In order to preserve a hearsay objection, "a party must either move to strike the affidavit or otherwise lodge an objection with the district court." *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1003 (9th Cir. 2002).  In the absence of objection, the Court may consider hearsay evidence. *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1094

(9th Cir. 1990).

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## A.  Poulson's Motion for Summary Judgment

Plaintiff is suing Defendant Poulson under 42 U.S.C. § 1983, alleging that defendants violated the Eighth Amendment by subjecting him to cruel and unusual punishment. To succeed on his claim, plaintiff must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. *McGuckin v. Smith,* 974 F.2d 1050 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton

infliction of pain.'" *Id.* at 1059 (citing *Estelle,* 429 U.S. at 104). Second, the plaintiff

must show the defendant's response to the need was deliberately indifferent. *Id.* at 1060.

This second prong – defendant's response to the need was deliberately indifferent – is

satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or

possible medical need and (b) harm caused by the indifference. *Id.* Indifference "may

appear when prison officials deny, delay or intentionally interfere with medical treatment,

or it may be shown by the way in which prison physicians provide medical care." *Id.* at

1059 (quoting *Hutchinson v. United States,* 838 F.2d 390, 392 (9th Cir.1988)). Yet, an

"inadvertent [or negligent] failure to provide adequate medical care" alone does not state

a claim under § 1983. *Id.* (citing *Estelle,* 429 U.S. at 105).

A prison official acts with "deliberate indifference ... only if the [prison official]

knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Washoe

Cnty.,* 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks

omitted). Under this standard, the prison official must not only "be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists," but that

person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If

a [prison official] should have been aware of the risk, but was not, then the [official] has

not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at

1188 (citation omitted). This "subjective approach" focuses only "on what a defendant's

mental attitude actually was." *Farmer*, 511 U.S. at 839.  "Mere negligence in diagnosing

or treating a medical condition, without more, does not violate a prisoner's Eighth

Amendment rights." *McGuckin*, 974 F.2d at 1059 (alteration and citation omitted).

As for the "harm caused by the indifference," a prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id.* at 1060. If, on the other hand, the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id.* (citations omitted).

Here, the factual record does not support Ritter's contention that Poulson refused to provide any pain medication to Ritter; rather, it shows Poulson would often refuse to prescribe the specific pain medications Ritter wanted.  For example, as noted above, in December 2012, Poulson prescribed Depakene rather than Tramadol, notwithstanding Dr. Andrew's recommendation for a Tramadol prescription.  Poulson said that, based on his review of Ritter's file, a different pain medication should have been adequate. Poulson also points out that Dr. Andrew later recommended that Ritter discontinue Tramadol.

Plaintiff also says Poulson prescribed medications with adverse side effects, including risk of suicide.  Here, Ritter is apparently referring to his October 11, 2012 visit with Poulson.  At that time, Poulson prescribed Tegretol.  He later discontinued that medication, noting in a grievance form that Ritter described "specific but atypical side effects to other medications I have offered for neuropathic pain."  Dkt. 40-9, at 8.  Also, as noted above, during this visit, Poulson recorded his impression that Ritter met the DSM-IV criteria for "probable malingering" and further noted that Ritter "seemed to

imply that he would try anything I prescribed for his pain and intentionally fail or claim adverse psychological effects until I prescribed him narcotics . . . . I suspected gaming with this patient because he should be amenable to neuropathic pain treatment options which he had failed in a serial fashion so far." *Id.   See* MR 37. It is also undisputed that Ritter had tried to hide medication in 2011.  Poulson was thus attempting to find alternative, non-narcotic methods of pain relief.

Based on the above facts, it is apparent that Poulson and Ritter have differing opinions as to which types of pain medication will be effective.  But "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981).  Similarly, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989). Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Id.* (citation omitted); *Toguchi*, 391 F.3d at 1058.  In short, then, although Ritter disagrees with the pain medications he has been provided, he has failed to raise material question of fact regarding this issue.

Rather, the record reflects that Ritter has received ongoing access to medical

treatment, including repeated visits to the prison clinic and off-site providers, repeated sophisticated medical testing and imagery, and referrals to and consultations with doctors inside and outside the prison. Nothing before the Court suggests defendants have intentionally denied, delayed, or interfered with care or treatment of Ritter's medical needs. The Court will therefore grant Poulson's motion for summary judgment.

## 2.    Siegert's Motion for Summary Judgment

Ritter has also failed to establish that Defendant Rona Siegert was deliberately indifferent to his serious medical needs.  Siegert was not directly involved in providing medical care to Ritter.  Rather, her only involvement appears to be as the final appellate authority on three of Ritter's grievances.  *See Whittington Aff.*, Ex. G, Dkt. 40-3.  In all three instances, Siegert denied Ritter's appeals, concluding that there was no evidence to support his claims of retaliation or inadequate medical care.  *See id.*

As discussed above, the factual record does not reveal that Ritter's medical providers were deliberately indifferent to his serious medical needs.  Similarly, there is no evidence that Siegert herself was deliberately indifferent to Ritter's serious medical needs, or that she knew of, yet failed to prevent, constitutional violations related to Ritter's medical care.  *See generally Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984) (a supervisor is only liable for constitutional violations of her subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them).  Accordingly, Siegert is entitled to summary judgment as well.

### 3.      Clark's Motion for Summary Judgment

Finally, the Court will grant summary judgment in favor of Defendant Clark because Ritter's claim against him is time barred.  As noted earlier, Ritter's allegations against Defendant Clark relate to the September 26, 2011 incident.  On that date, Clark placed Ritter in administrative segregation for attempting to hide his pain pills.  Ritter does not deny hiding his pain pills, but he says Clark was deliberately indifferent to his serious medical needs by ordering medical staff to discontinue his pain medications.[4]

Ritter's § 1983 action is governed by Idaho's two-year statute of limitations applicable to personal injury claims.  *See Owens v. Okure*, 488 U.S. 234-249 (1989); Idaho Code § 5-219(4).  Ritter sued Clark on November 29, 2013 – more than two years after Clark's alleged misconduct.  Accordingly, unless the statute of limitations has been tolled, Ritter's claim is time barred.

Ritter says the two-year limitations period was tolled for two reasons.

First, he points to Idaho Code § 5-213, which allows prisoners, and other "persons under disability," to toll the limitations period applicable to actions to recover real property.  Ritter is not seeking to recover real property, however, so this statute is not helpful to him.

---

[4] Clark disputes this allegation, and Ritter's medical records show that he received pain medication while he was in administrative segregation, and that he was also taken offsite for an abdominal CT scan for pain.  *See Poulson Aff.*, Dkt. 82-3, at 11-13, MR 15-19, Dkt. 82-4.  The Court does not need to resolve factual disputes on these points, however, to resolve Clark's motion for summary judgment.

Ritter next says the limitations period should be tolled indefinitely because he was *attempting* to exhaust his administrative remedies but prison staff prevented him from doing so. This argument is more complex, but ultimately unpersuasive.

The Prison Litigation Reform Act ("PLRA") requires prisoners bringing a § 1983 action to first present their claims through an administrative grievance process. 42 U.S.C. § 1997e(a). A prisoner must comply with the PLRA exhaustion requirement with respect to any claim arising in a prison setting, regardless of the nature of the claim or the relief sought. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Ninth Circuit has held that because exhaustion is mandatory under the PLRA, the statute of limitations applicable to § 1983 actions must be tolled while a prisoner completes the exhaustion process. *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005).[5]

Here, although Ritter used IDOC's grievance system to exhaust other claims relevant to this lawsuit, he did not complete the grievance process regarding his claim against Clark. None of the grievances or concern forms in the record even mention the September 2011 incident with Clark. As a result, Ritter cannot show that the two-year

---

[5] It is not entirely clear equitable tolling is available to Ritter on these facts. Ritter does not point to any applicable Idaho statute permitting equitable tolling. *See generally McCuskey v. Canyon County Comm'rs*, 912 P.2d 100, 105 (Idaho1996) ("'Statutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute.'") (citing *Independent Sch. Dist. v. Callister,* 539 P.2d 987, 991 (Idaho 1975)). Further, the Supreme Court has directed courts to refer to state law in examining tolling in the context of § 1983 actions. *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-84 (1983). That said, however, in *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005), the Ninth Circuit held that limitations periods are tolled while prisoners pursue their administrative remedies. Accordingly, the Court assumes Ritter may argue that the limitations period was tolled while he pursued his administrative remedies.

limitations period was tolled for a specific number of days to account for the time he would have taken to comply with the PLRA's exhaustion requirement.

Perhaps recognizing this, Ritter's tolling argument is much vaguer.  Ultimately, he is arguing that the limitations period should be tolled indefinitely based on his general allegations that prison staff (1) failed to provide concern forms or grievance forms to him; (2) failed to process his concern and grievance forms; and (3) "conveniently lost" his concern or grievance forms.  Thus, although Ritter's brief speaks in terms of *completing* the exhaustion process, he is actually arguing that he should be *excused* from the exhaustion requirement.

Administrative remedies will be deemed unavailable, and exhaustion excused, if an inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1172-73 (9th Cir. 2014).

But just because a prisoner may be excused from the exhaustion requirement does not mean the statute of limitations should be tolled indefinitely, as Ritter is suggesting. Rather, a prisoner seeking to avail himself of tolling must act with diligence, and he has the burden of coming forward with specific facts that will support tolling.  *See generally Rhoades v. State*, 220 P.3d 1066, 1068 (Idaho 2009).  Otherwise, an inmate could

eternally delay filing a lawsuit based on his conclusory, general assertions that prison staff is mishandling his concern form or grievance, or that he is waiting for the prison to respond to some outstanding grievance. This is not a reasonable outcome. As one court explained, "[a]llowing Plaintiff to rely on a failed [grievance] filing – whether it resulted from his or Defendants' missteps – to permanently toll the statute of limitations on initiating a civil action would create an unreasonable outcome." *Feliciano v. Dohman*, No. CIV.A. 12-4713, 2014 WL 6473275, at *9 (E.D. Pa. Nov. 18, 2014), *aff'd*, 645 F. App'x 153 (3d Cir. 2016).

In this case, Ritter has not come forward with specific facts establishing that the limitations period should be tolled for any particular period of time while he attempted to grieve his claim against Clark. Instead, his briefing contains vague, inconsistent, conclusory statements regarding his attempts to utilize the grievance process. Ultimately, based on these assertions, he suggests that he was perpetually in a state of limbo because prison staff did not process his concern forms, or lost them. These sorts of assertions are not sufficient to entitle Ritter to tolling. The Court will therefore grant summary judgment in Clark's favor because Ritter's claim against him is time barred.

## ORDER

**IT IS ORDERED that:**

1.    Plaintiff's Motion for an Extension of Time to Serve Debbie Richardson (Dkt. 67) is **DENIED.**

2.      Plaintiff's Motion to Compel Answers from Defendant William Poulson (Dkt. 68) is **DENIED.**

3.      Plaintiff's Motion to Compel Production of Documents from Defendant William Poulson (Dkt. 69) is **DENIED.**

4.      Plaintiff's Motion to Compel IDOC to Comply with Scheduling Order, And Answer the Plaintiff's Interrogatories to Siegert and Clark (Dkt. 70) is **DENIED**.

5.      Plaintiff's Motion to Compel Production of Documents from Defendants Rona Siegert and Eugene Clark (Dkt. 71) is **DENIED.**

6.      Defendant William Poulson's Motion for Summary Judgment (Dkt. 82) is **GRANTED.**

7.      Defendants Eugene Clark and Rona Siegert's Motion for Summary Judgment (Dkt. 83) is **GRANTED.**

8.      Plaintiff's Request to Refer this Case to ADR (Dkt. 77) is **MOOT.**

DATED: March 27, 2017

B. Lynn Winmill
Chief Judge
United States District Court